UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LC FRANCHISOR, LLC, and<br>LC CORPORATE, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>VALLEY BEEF, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)   Case No. 4:15-cv-00383 JCH<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Valley Beef LLC's Motion to Dismiss Plaintiff's First Amended Complaint. (Motion, ECF No. 10). The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

Plaintiffs LC Franchisor, LLC and LC Corporate, LLC (collectively "Lion's Choice") initiated this action by filing a complaint in this Court. (ECF No. 1). They later amended the complaint, and that amended complaint (the "Complaint") is now operative. (Complaint, ECF No. 8). Prior to Lion's Choice's filing of this action, Valley Beef had initiated an action in the Circuit Court for St. Louis County, Missouri. (VB Petition, ECF No. 11-1). Lion's Choice then removed that state action to this Court, and the removed action was assigned Case No. 4:15-cv-00563 JAR. (Removal Notice, No. 15-cv-563, ECF No. 1). The removed action was consolidated with this case upon motion by Lion's Choice. (Consolidation Order, ECF No. 18).

The Complaint explains that "[t]his action arises out of a franchise agreement [(the "Franchise Agreement")] to operate Lion's Choice® restaurants entered into by and between LC

1

Franchisor" and Valley Beef. (Complaint ¶ 1). "After entering into the Franchise Agreement, [Valley Beef] provided financial documents demonstrating that it was insolvent, thus triggering Lion's Choice's contractual right to terminate the Franchise Agreement and to preclude [Valley Beef's] continued use of Lion's Choice's copyrights and trademarks." *Id.* Lion's Choice also allege that Valley Beef breached the Franchise Agreement in five other ways. *Id.* ¶ 2. Based on these events, which the Complaint discusses in detail, Lion's Choice bring ten counts against Valley Beef. Three counts relate directly to the Franchise Agreement—one for a declaration that Valley Beef breached the Agreement, one for a declaration that Lion's Choice properly terminated the Agreement, and one for breach of the Agreement. *Id.* at ¶¶ 77-105. The Complaint also contains counts of copyright infringement, trademark infringement, and other violations of the Lanham Act. *Id.* at ¶¶ 106-146. Based on these claims, the Complaint seeks remedies provided under the relevant federal statutes. *Id.* at pp. 28-30.

Valley Beef has moved for dismissal of Lion's Choice's Complaint under Fed. R. Civ. P. 12(b)(1).

## **DISMISSAL UNDER FED. R. CIV. P. 12(B)(1)**

Rule 12(b)(1) allows federal courts to dismiss for "lack of subject-matter jurisdiction." *Id.* In ruling on a motion under Rule 12(b)(1), a district court "must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party." *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 985, 988 (8th Cir. 2010) (quoting *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008)). The parties seeking to invoke federal jurisdiction, in this case Lion's Choice as Plaintiffs, have the burden "to establish jurisdiction by a preponderance of the evidence." *Newhard, Cook & Co. v. Inspired Life Ctrs., Inc.*, 895 F.2d 1226, 1228 (8th Cir. 1990).

**DISCUSSION**

Valley Beef suggests the Court lacks subject-matter jurisdiction over Lion's Choice's Complaint for two reasons. First, Valley Beef maintains that, although Lion's Choice alleges copyright and trademark infringement, the Complaint is better understood as one sounding in contract. Since the thrust of the Complaint therefore involves state law, according to Valley Beef, the Court lacks jurisdiction. Valley Beef's second contention is that Lion's Choice's claims do not satisfy Article III's "case or controversy" requirement because they are not ripe for decision.

   1. *Whether the Complaint "Arises Under" 28 U.S.C. § 1338(a)*

Under 28 U.S.C. § 1338(a), federal district courts "have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights and trademarks." *Id.* Federal jurisdiction over copyright actions is exclusive. *Id.* ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to . . . copyrights."). The determination of whether a claim "arises under" federal copyright and trademark law, thus conferring federal jurisdiction, is a difficult issue, one which the Eighth Circuit has yet to address. In the circuits that have addressed the issue, one thing is clear: "not every complaint that refers to the Copyright Act [or the Lanham Act] 'arises under' that law for purposes of Section 1338(a)." *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 347 (2d Cir. 2000); *accord 1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1049 (10th Cir. 2006); *Int'l Armor & Limousine Co. v. Moloney Coachbuilders, Inc.*, 272 F.3d 912, 915 (7th Cir. 2001); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997). There is some dispute, however, over what should be taken into account in determining whether § 1338(a) confers jurisdiction over a claim.

According to Valley Beef, Lion's Choice's copyright and trademark infringement claims are nothing more than artful pleading designed to defeat state court jurisdiction. (Support Memo, ECF No. 11, at 8). Valley Beef concedes that if Lion's Choice properly terminated the Franchise Agreement, it has no right to use the Lion's Choice copyrights and trademarks. *Id.* Thus, looking beyond the face of Lion's Choice's Complaint, Valley Beef contends that this is really a contract dispute and therefore not one arising under federal copyright or trademark law. *Id.* Lion's Choice responds that the Court has subject-matter jurisdiction because the Complaint facially invokes rights conferred under federal copyright and trademark statutes, and it seeks remedies created by those statutes. (Response, ECF No. 13, at 2).

To support its position, Valley Beef relies on a line of cases from the Second Circuit, which adopted an approach that was described most thoroughly in *Schoenberg v. Shapolsky Publishers, Inc.*, 971 F.2d 926 (2d Cir. 1992). (*See* Support Memo at 8-11). In *Schoenberg*, an author and a publisher entered into an agreement under which the author retained ownership of the copyright of his book and granted the publisher a license to publish it. *Id.* at 928. The publisher's successor-in-interest ultimately published the author's work in 1989, which was about four years later than the date to which the parties agreed. *Id.* The author alleged in his complaint that the offending publication infringed his copyright, thus conferring jurisdiction on the federal district court. *Id.* The *Schoenberg* court noted that the author had alleged infringement and requested remedies based on that infringement. *Id.* at 931. This facial allegation of infringement, however, was insufficient to confer federal jurisdiction. *Id.* Instead, the court explained, district courts must go behind the face of the complaint and use a three-part test to determine the true "essence" of the complaint. *Id.* at 932-33.

Valley Beef also relies on a case from the Seventh Circuit for support. (Reply, ECF No. 14, at 7 (citing *Moloney Coachbuilders*, 272 F.3d 912)). In *Moloney Coachbuilders*, a limousine customizer named Earle Moloney sold the name of his limousine business, "Moloney Coach Builders," to an individual buyer. *Moloney Coachbuilders*, 272 F.3d at 913. The sale of this name was held in an earlier action to include both the right to use it as a corporate name and as a trademark. *Id.* Moloney eventually started a new company. *Id.* In advertising his new company, Moloney made use of his name and made reference to the work he had done as owner of his first company. *Id.* One advertisement, for example, referred to the new company as "A Moloney Owned Entity." *Id.* Moloney then filed suit against the buyer in federal court "seeking a declaratory judgment that use of these and similar phrases does not violate § 43 of the Lanham Act . . . ." *Id.* The buyer then filed a counterclaim for violation of the Lanham Act. *Id.* at 917. The Seventh Circuit held that it had no jurisdiction over the action. It reasoned that ownership of the trademark was at the heart of the dispute and that the action therefore was one arising under state contract law. *Id.* at 916-17. The trademark claims were, according to the court, nothing more than "a coat of water-soluble paint that washes away to reveal the contract dispute underneath." *Id.* at 916.

Lion's Choice note several problems with the authority on which Valley Beef relies, especially regarding *Schoenberg*. They note first that the approach described by the Second Circuit in *Schoenberg* was later abandoned by that circuit in *Bassett*, 204 F.3d 343. (Response at 3). *Bassett* dealt with a situation that was similar to *Schoenberg* in that the complaint involved the alleged breach of a contract that had conferred the right to use certain copyrights, and the alleged use of the copyrighted material after the breach amounted to infringement. *Id.* at 346. The Second Circuit held that such a claim arises under § 1338(a), at least where remedies for

5

infringement are sought. *Id.* at 355-56. It began its reasoning with a discussion of *T.B. Harms Co. v. Eliscu*, 339 F.2d 823 (2d Cir. 1964), the seminal Second Circuit case on this topic. The *T.B. Harms* court held that a claim involving a copyright can be said to arise under § 1338(a) in three situations: (1) when "the complaint is for a remedy expressly granted by the [Copyright] Act[;]" (2) when the complaint "asserts a claim requiring construction of the Act[;]" or (3) when the complaint "presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *T.B. Harms*, 339 F.2d at 828.

*Bassett* explained that courts in the Second Circuit became divided into two camps over application of the *T.B. Harms* standard. *Bassett*, 204 F.3d at 351-52. On one side stood courts that looked at the face of the complaint to determine whether one of the *T.B. Harms* elements applied. On the other stood those courts that used an approach like the one described in *Schoenberg*, looking beyond the face of the complaint to determine the "essence" of the dispute. *Bassett*, 204 F.3d at 351-52. The *Bassett* court noted several problems with the essence-of-the-dispute approach. The first was that it "left a class of plaintiffs who suffered copyright infringement bereft of copyright remedies" because state courts have no jurisdiction to grant remedies under the Copyright Act. *Id.* at 348, 352. The court also noted that the *Schoenberg* test is unworkable and vague, that it departs from the Supreme Court precedent on which *T.B. Harms* relied, and that it required courts "to make complex factual determinations relating to the merits at the outset of the litigation—before the court has any familiarity with the case." *Id.* at 352-55.

In addition to these weaknesses, the *Bassett* court demonstrated that the weight of authority in other circuits favors the *T.B. Harms* approach. *Id.* at 350-51 (citing *MCA Television Ltd. v. Pub. Interest Corp.*, 171 F.3d 1265, 1269 (11th Cir. 1999); *Arthur Young & Co. v. City of Richmond*, 895 F.2d 967, 969-70 (4th Cir. 1990); *Vestron, Inc. v. Home Box Office, Inc.*, 839

F.2d 1380, 1381 (9th Cir. 1988); *Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987)). The court also cited two treatises on copyright law that praise the face-of-the-complaint approach. *Id.* at 349 (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01[A], at 12-4 (1999); 2 William F. Patry, *Copyright Law and Practice* 1065, 1067 (1994)). It should also be noted here that at least two other circuit courts have accepted the *T.B. Harms* approach since the Second Circuit decided *Bassett*. *1mage Software*, 459 F.3d at 1048-51; *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 844-45 (D.C. Cir. 2002).

The Court agrees with the many circuits and other authorities that have adopted the *T.B. Harms* approach. Two of the reasons set forth by the *Bassett* court are especially apt here. The first is that if this case were forced into state court, Lion's Choice would be left without a remedy on its copyright claims. This would be an especially troubling precedent considering that some type of contract dispute "will almost always be a threshold issue in a copyright infringement action[,]" since contracts are a common way of conferring ownership of or the right to use a copyright. *See Vestron*, 839 F.2d at 1382. The second reason that stands out is the difficulty of determining what the essence of this dispute is. While it is true the Complaint includes contract claims that must be decided before the infringement claims, it requests remedies under both sets of theories, and it is not clear which will predominate. To determine at this early stage which set of theories is the Complaint's "essence" therefore would be premature.

Application of the face-of-the-complaint test is quite simple in this instance. *T.B. Harms* makes clear that one situation in which federal courts have jurisdiction over claims involving copyrights or trademarks is when a plaintiff pursues a remedy specifically provided in the relevant federal statutes. As noted above, Lion's Choice's Complaint requests remedies created

7

by the Copyright Act and Lanham Act. The Court therefore has jurisdiction over this action under the *T.B. Harms* approach.

It is difficult to see why the Court should follow Valley Beef's recommendation of adopting an approach like the one used in *Schoenberg*, since that approach has been expressly abandoned by the circuit in which it arose. And even if the Court were to apply the standard described by the Seventh Circuit in *Moloney Coachbuilders*, as Valley Beef suggests in its Reply, the outcome of this case would not change. The Seventh Circuit made clear in *Moloney Coachbuilders* that a key reason for its holding was that no relief had been requested under federal trademark law. *Moloney Coachbuilders*, 272 F.3d at 916-17. Instead, the case began as one for a declaration of non-infringement, rather than a positive claim of infringement. *Id.* at 913. The court stated explicitly that "[a] claim might arise under federal law even though all dispositive issues depend on state law if" federal trademark law were to provide a remedy that state law does not. *Id.* at 916-17. As Lion's Choice includes claims for distinct remedies under federal copyright and trademark law, a court applying the *Moloney Coachbuilders* approach thus would conclude that the Complaint arises under federal copyright and trademark law. Valley Beef has not provided a basis for dismissal.

*II. Whether Lion's Choice's Claims are Ripe for Decision*

Valley Beef next suggests the Complaint should be dismissed because it does not present claims that are ripe for decision. (Support Memo at 13). According to Valley Beef, Lion's Choice's federal claims are not definite enough for decision because they require the Court first to determine whether the Franchise Agreement was properly terminated. *Id.* at 14. Valley Beef characterizes this as a "contingent future event[]" that makes Lion's Choice's federal claims "speculative . . . ." *Id.* Lion's Choice respond, in part, that Valley Beef's argument must fail

8

because the events surrounding the alleged termination and infringement have already occurred. (Response at 11).

"The ripeness doctrine is aimed at preventing federal courts, through premature adjudication, from 'entangling themselves in abstract disagreements.'" *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 863 (8th Cir. 2006) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985)). The test for determining whether a claim is ripe for review has two prongs. Courts must examine "both the 'fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014) (quoting *Nebraska Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000)).

Valley Beef's argument rests on misunderstanding of the ripeness doctrine. Lion's Choice's Complaint alleges that Valley Beef became insolvent, thus allowing Lion's Choice to terminate the Franchise Agreement. It also alleges that Valley Beef's continued use of Lion's Choice's copyrights and trademarks amounts to infringement. Thus, all of the events relevant to Lion's Choice's Complaint have already occurred and continue to occur. The Court need only determine the legal significance of those events. Lion's Choice's claims are therefore ripe for review.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Valley Beef LLC's Motion to Dismiss Plaintiff's First Amended Complaint, (ECF No. 10), is **DENIED**.

Dated this 2nd day of July, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE