**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LC FRANCHISOR, LLC, and | ) | |
| LC CORPORATE, LLC | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-CV-00383-JCH |
| | ) | |
| VALLEY BEEF, LLC | ) | |
| | ) | |
|      Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs LC Franchisor, LLC's and LC Corporate, LLC's (together, "Lion's Choice") Motion for Partial Summary Judgment on Liability.  (ECF No. 65.)  The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

The following facts are undisputed.  Lion's Choice is a St. Louis based quick service restaurant chain that specializes in roast beef sandwiches.  The company and brand were originally owned by Red Lion Beef ("RLB").  Valley Beef, LLC ("Valley Beef") was formed in 2001 as a Lion's Choice franchisee.  In December 2011, Valley Beef filed for Chapter 11 bankruptcy.  In September 2013, Lion's Choice underwent a change in ownership, and LC Corporate, LLC acquired RLB's assets.  On February 12, 2014, shortly after Valley Beef emerged from bankruptcy, Lion's Choice and Valley Beef entered into a modified Franchise Agreement (hereinafter, the "Agreement") and a Promissory Note and Repayment Agreement (hereinafter, the "Note").  (Plaintiffs' Statement of Uncontroverted Material Facts ("Plf. SUMF")

1

¶ 1.)  In negotiating the Agreement and the Note, the Parties were represented by counsel.  *Id.* ¶ 2.

The Agreement requires, in part, that Valley Beef periodically deliver to Lion's Choice financial reports and information, including, but not limited to, consolidated balance sheets and income statements.  *Id.*  ¶ 4.   The Agreement also provides the following with respect to termination of the Agreement:

> This Agreement shall terminate immediately upon written notice from Franchisor to Franchisee in accordance with the notice provisions hereof upon:
>
>> 13.1.1 the insolvency of Franchisee…
>
> Franchisor shall have the right at its election to terminate this Agreement upon the lesser of the minimum time required by applicable law or ninety (90) days written notice ("*Ninety Day Notice*") to Franchisee upon the occurrence of any of the following:…
>
>> 13.2.4 a default by Franchisee under any of (a) the Promissory Note and Repayment Agreement…
>
> Upon termination of this Agreement for any reason, all of Franchisee's rights and privileges hereunder shall immediately cease, and Franchisee shall immediately cease operating or using, or permitting to be used or operated, anywhere in any manner and whether directly or indirectly:  (a) the Proprietary Marks; (b) all advertising and promotional materials and programs, menu boards, signs, supplies, uniforms or other items bearing the Proprietary Marks; (c) the licensed Know-How; (d) the Standards Manual; and (e) [the] Franchisor's exterior building design.

*Id.* ¶¶ 3, 6, 29.  The Promissory Note sets forth the following "Events of Default":  (g)  Borrower shall…(vi) become unable, admit in writing its, his or her inability or fail generally to pay its, his or her debts as they become due, (vii) become insolvent or (viii) take any action for the purpose of effecting any of the foregoing…"  *Id.* ¶ 7.  As relevant, neither the Agreement nor the Note explicitly define the terms "insolvency" or "insolvent."

After the Agreement and the Note were executed, Valley Beef submitted to Lion's Choice monthly income statements for February, March, and April 2014, which collectively showed a deficit of $████. *Id.* ¶ 12.  On July 7, 2014, Valley Beef provided Lion's Choice with a balance sheet dated May 31, 2014, which showed Valley Beef's "total assets" as $████ and "total liabilities" as $████. *Id.* ¶ 14.  Also during this time period, Valley Beef failed to timely pay invoices from multiple vendors. *Id.* ¶¶ 55-58.  Valley Beef subsequently provided Lion's Choice with a balance sheet dated July 14, 2014, which showed Valley Beef's "total assets" as $████ and "total liabilities" as $████. *Id.* ¶ 16. The financial statements and balance sheets Valley Beef provided to Lion's Choice correctly reflected all of the company's assets and liabilities. *Id.* ¶ 19.

On August 1, 2014, Lion's Choice sent Valley Beef written notice of termination, which became effective on February 27, 2015. *Id.* ¶¶ 21, 28.  The termination notice states in pertinent part:

> The Balance Sheet provided by Valley Beef to the Franchisor as of May 31, 2014 shows that Valley Beef is insolvent.  Under Section 13.1 of the Franchise Agreement, Valley Beef's insolvency is grounds for immediate termination of the Franchise Agreement.

(Plf. Ex. 16.)  Following its receipt of the termination notice, Valley Beef has continued to operate Lion's Choice brand restaurants and to use Lion's Choice's trademarks and copyrights. *Id.* ¶ 30.

On March 1, 2015, Lion's Choice filed its Complaint for Declaratory Judgment and Injunctive Relief against Valley Beef, asserting claims of breach of contract and trademark and copyright infringement.  (ECF No. 1.)   Valley Beef filed a Counterclaim against Lion's Choice, also seeking declaratory judgment and asserting claims of breach of contract, breach of the covenant of good faith and fair dealing, and fraud.  (ECF No. 20.)  As mentioned above, Lion's

Choice now moves for partial summary judgment on the issue of liability.  The Parties essentially dispute whether Lion's Choice's termination of the Agreement was proper, and more specifically, whether Valley Beef was insolvent pursuant to the terms of the Agreement.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In ruling on a motion for summary judgment, the Court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences that may be drawn from the record.  *See Hott v. Hennepin Cnty., Minn.*, 260 F.3d 901, 904-05 (8th Cir. 2001) (citations omitted).

The moving party bears the burden of showing the absence of a genuine issue of material fact.  *See Anderson*, 477 at 256.  When a summary judgment motion is properly supported by evidence, the burden then shifts to the non-moving party who must set forth affirmative evidence showing that there is a genuine issue for trial.  *See id*. at 256-57.  "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."  *Falco v. Farmers Ins. Grp.*, 795 F.3d 864, 867 (8th Cir. 2015) (quotation omitted).

## DISCUSSION

This case turns on the propriety of Lion's Choice's termination of Valley Beef's franchise pursuant to section 13.1.1 of the Parties' Agreement.  Thus, the primary issue before

the Court is one of contract interpretation.  The Parties do not contend that the termination provision is ambiguous; rather, they disagree as to the meaning of the term "insolvency."  Lion's Choice argues that under the Agreement a franchisee is insolvent if its liabilities exceed its assets, and that it is beyond genuine dispute that Valley Beef was insolvent because its liabilities exceeded its assets by more than $███████, as reflected in the May 31, 2014 balance sheet. Valley Beef counters that mere reliance on a balance sheet is improper, and that a debtor is insolvent if the sum of its debts is greater than all of its property, fairly valued.  Valley Beef argues that, because it is a going concern with real value in its operating business, it is entitled to have its business fairly valued prior to termination.  Valley Beef also cites cases for the proposition that Missouri courts have defined insolvency as an inability to pay debts as they become due in the ordinary course of business.

The Agreement provides that "it shall be governed, construed and interpreted in accordance with the laws of the State of Missouri."  (Plf. Ex. 1 § 17.14.)  Under Missouri law, "[t]he cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent."  *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. 2003) (en banc).  "The interpretation of an unambiguous contract is a matter for the court."  *See Bores v. Domino's Pizza, LLC*, 530 F.3d 671, 674 (8th Cir. 2008) (citing, inter alia, *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. 1973) (en banc)). "If a contract is unambiguous, the parties' intent is manifest from the terms of the contract itself."  *Id.*  "An ambiguity does not exist merely because the parties dispute the meaning of the contract."  *Robbins v. McDonnell Douglas Corp.*, 27 S.W.3d 491, 496 (Mo. Ct. App. 2000)

In determining the intent of the parties, the terms of a contract are read as a whole, and given their plain, ordinary, and usual meaning.  *Pepsi MidAmerica v. Harris*, 232 S.W.3d 648,

655 (Mo. Ct. App. 2007).   Each term and clause is construed to avoid an effect that renders other terms and provisions meaningless.   *State ex rel. Mo. Highway. & Transp. Comm'n v. Maryville Land P'ship*, 62 S.W.3d 485, 492 (Mo. Ct. App. 2001) (citations omitted).   A construction attributing a reasonable meaning to each phrase and clause, and harmonizing all provisions of the agreement is preferred to one that leaves some of the provisions without function or sense.   *Id.*   Where, as here, multiple documents make up the parties' agreement, "the parties' intent and the meaning of those documents must be determined from the entire transaction and not simply from isolated portions of particular documents."   *J.H. Berra Const. Co. v. Mo. Highway & Transp. Comm'n*, 14 S.W.3d 276, 279 (Mo. Ct. App. 2000) (quotation omitted).

Here, the Parties have identified two definitions of the term "insolvent" under Missouri law.   Pursuant to the Missouri Uniform Commercial Code, "[a] person is 'insolvent' who either has ceased to pay his or her debts in the ordinary course of business or cannot pay his or her debts as they become due or is insolvent within the meaning of the federal bankruptcy law."   Mo. Rev. Stat. § 400.1-201(23).   Under federal bankruptcy law, an entity is 'insolvent' when the sum of its debts is greater than such entity's property at fair value.   11 U.S.C. § 101(32)(A)); *see also Murray v. Am. Family Mut. Ins. Co.*, 429 F.3d 757, 763 (8th Cir. 2005) (recognizing "at least two definitions of 'insolvent'" under Missouri law, as set forth in § 400.1-201(23) and § 101(32)(A)). Black's Law Dictionary similarly defines "insolvent" as either "having liabilities that exceed the value of assets" or "having stopped paying debts in the ordinary course of business or being unable to pay them as they fall due."   BLACK'S LAW DICTIONARY (10th ed. 2014).

Reading the Agreement and the Note as a whole, it is apparent that the plain and ordinary meaning of the term "insolvency," as it is used in the Parties' Agreement, means having debts

greater than the entity's property at fair value.  The Agreement and the Note were negotiated together, reference each other, and were executed at the same time.  The Note sets forth eight "Events of Default," including the event of Valley Beef becoming "insolvent," and, as a separate event of default, Valley Beef being "unable" or "fail[ing] generally to pay its…debts as they become due."  As Lion's Choice argues, if the Parties had intended "insolvency" and "insolvent" to also encompass failure or inability to pay debts as they fall due, the Note's inclusion of the separate ground for default listing such would become meaningless and without function or sense.  This construction reached by the Court is also supported by the Agreement's requirement that Valley Beef submit to Lion's Choice periodic balance sheets.[1]

The Court further concludes that, contrary to Valley Beef's assertions, the May 31, 2014 balance sheet—which the Parties agree "correctly reflect[ed]" all of Valley Beef's assets and liabilities at the time—demonstrates that Valley Beef was insolvent.  Caselaw supports the principle that an entity's balance sheet serves as evidence of its "fair value."  In *Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.*, a case cited by Valley Beef for the proposition that a debtor is insolvent if the sum of its debts is greater than all of its property at fair value, the Eighth Circuit determined that the debtor's balance sheet, which reported assets in excess of liabilities and a positive net worth, demonstrated that the debtor was solvent.  83 F.3d 253, 258 (8th Cir. 1996); *see also In re Prime Realty, Inc.*, 380 B.R. 529, 534-35 (8th Cir. BAP 2007) (to determine whether a company meets § 101(32)(A)'s definition of insolvency under the fair valuation" standard, "the court should examine the debtor's balance sheet to determine whether the value of its assets were greater than its liabilities.").  Here, Valley Beef's May 31, 2014

---

[1] Even if the term "insolvency," as it is used in the Parties' Agreement, means failure or inability to pay debts as they become due, Valley Beef concedes that it had failed to timely pay invoices from multiple vendors.  Thus, under either definition, Valley Beef was insolvent.

balance sheet reported liabilities in excess of assets and a negative net worth of over $███████.

In addition, Valley Beef has failed to introduce evidence demonstrating that its book value

inaccurately reflected its property's fair value.  Thus, based upon the uncontroverted evidence

before the Court, Valley Beef was insolvent.[2]  *Cf. Cole v. Strauss*, No. 2:13-cv-04200, 2014 WL

4055787, at *6 (W.D. Mo. Aug. 15, 2014) (where company's balance sheet showed assets of $37

million, and liabilities of $110 million, the company "was always insolvent").

Valley Beef asserts in the alternative that there exist material issues of fact as to whether

Lion's Choice waived its right to terminate Valley Beef for having liabilities in excess of assets.

Specifically, Valley Beef argues that prior to the execution of the Agreement Lion's Choice had

actual knowledge that Valley Beef's balance sheet showed a $██████ deficit, and that Lion's

Choice nevertheless agreed to accept Valley Beef as a franchisee and has continued to conduct

business with and accept payments from Valley Beef.  Valley Beef further asserts that Lion's

Choice should be estopped from proceeding under section 13.1 of the Agreement, arguing that in

the event of termination Valley Beef will suffer the loss of payments it has made under the

Agreement and capital it has invested into its properties pursuant to the requirements of Lion's

Choice.

The Court concludes that terms of the Agreement render Valley Beef's arguments

relating to waiver and estoppel without merit.  The Agreement states that Valley Beef's franchise

rights were being granted "[s]ubject to the terms of this Agreement," and that such rights can be

---

[2] The Court further notes that, to the extent Valley Beef urges the Court to disregard several of the "extraordinary expenses" (i.e., royalty settlement and legal and accounting fees) it incurred following its emergence from bankruptcy in determining its overall financial health, the Court finds this argument unavailing.  Valley Beef's financial obligations, regardless of their nature, constitute debt for purposes of determining Valley Beef's fair value as a going business concern.

"terminated as hereinafter provided."  (Plf. Ex. 1 §§ 1.2, 2.)  The Agreement also specifically states:

> Any delay, forbearance or omission by Franchisor to act or give notice of default
> or to exercise any power or right arising by reason of such default hereunder shall
> not be deemed to be a waiver by Franchisor of any right hereunder or of the right
> subsequently to give notice of such default, and shall not affect or impair
> Franchisor's rights hereunder concerning such default…

*Id.* § 13.4.

Here, the record demonstrates beyond genuine dispute that Lion's Choice's actions were consistent with its rights under the Agreement.  There is no evidence that Lion's Choice at any time intentionally relinquished its right to terminate the Agreement in the event of Valley Beef's insolvency.  *See Midwest Petroleum Co. v. Am. Petrofina, Inc.*, 603 F. Supp. 1099, 1114 (E.D. Mo. 1985) (waiver is intentional relinquishment of known right; intent can be implied from conduct, but "there must be a clear, unequivocal and decisive act implying the intent and the implication must be so consistent with an intention to waive that no other reasonable explanation is possible") (citations omitted).  Similarly, there is no evidence that Lion's Choice falsely represented or concealed material facts in negotiating or executing the Agreement.  *See id.* (elements of estoppel include (1) conduct which amounts to false representation or concealment of material facts; (2) intention that such conduct shall be acted upon by, or influence, other party; and (3) knowledge, actual or constructive, of real facts).  The fact that Valley Beef was insolvent prior to and at the time of Parties' execution of the Agreement is an issue that should have been more appropriately raised during the Parties' counseled negotiations, particularly in connection with the termination provision.  In addition, with respect to Valley Beef's argument that in the event of termination it will suffer the loss of payments it has made under the Agreement and capital it has invested into its properties, the Court notes that Valley Beef has incurred theses

costs in exchange for the bargained-for benefit of operating Lion's Choice brand restaurants, not in exchange for interminable franchise rights.

Because the Court finds that Lion's Choice's termination of the Agreement was proper, it also finds that Valley Beef's continued operation of its franchise after February 27, 2015 constitutes a breach of the Agreement and the Note and a violation of Lion's Choice's trademarks and copyrights.  In view of these findings, the Court further concludes that Valley Beef's counterclaims necessarily fail.  *See CitiMortgage, Inc. v. Chicago Bancorp, Inc.,* 808 F.3d 747, 751-52 (8th Cir. 2015) ("[T]here can be no breach of the implied…covenant [of good faith and fair dealing] where contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract."); *Cavalier Homes of Ala., Inc. v. Sec. Pac. Hous. Serv., Inc.*, 5 F. Supp. 2d 712, 716 (E.D. Mo. 1997) (where party's actions were in accordance with plain meaning of agreement, they were not fraudulent or tortious).

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs LC Franchisor, LLC's and LC Corporate, LLC's Motion for Partial Summary Judgment on Liability (ECF No. 65) is **GRANTED**.

**IT IS FURTHER ORDERED** that Valley Beef, LLC's Counterclaim is **DISMISSED**.

Dated this 3rd day of October, 2016.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE